## James C. Davis, Director General of Railroads, Agt., Etc. v. E. K. Newell Company.

(Decided December 12, 1924.)

### Appeal from Mason Circuit Court.

1. Estoppel—Director General of Railroads Held Not Estopped to Deny Defendant's Employment to do Particular Work.—Letter mentioning defendant's employment, written by employe of branch of railroad administration, different from that under which

work involved was being done, held not to estop director general from subsequently denying employment; such employe not being shown to have authority to make statement or knowledge on which to base it.

2. Principal and Agent—One Dealing with and Making Payments to Undisclosed Agent is Not Liable to Principal.—One having dealt with undisclosed agent, and having made payments to him long before agency was disclosed, is not liable to principal.

3. Trial—Objection Held Such as Should have Been Pleaded in Avoidance, Rather than Relied on as Grounds for Peremptory Instruction.—Director general of railroad's objection that matter of counterclaim had not been filed within time permitted by Transportation Act, February 28, 1920, held such as should have been pleaded in avoidance, rather than made ground of motion for peremptory instruction.

WORTHINGTON, BROWNING & REED for appellant.

J. M. COLLINS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

The Director General of the Railroads, Agent, brought this suit against the E. K. Newell Company in the Mason circuit court for stone sold and delivered by him to it. By its answer, the company admitted this debt, but pleaded by way of counterclaim and setoff, an account alleged to be due it from the Director General, Agent, for work and labor done. A reply traversed the counterclaim and pleaded some affirmative matters which were in turn denied by rejoinder. A verdict was rendered for the Director General, Agent, on his claim and also for the company on its counterclaim and setoff, and the Director General, Agent, appeals.

Many grounds are urged for reversal, but it is sufficient to say, without passing on any of the other grounds, that we believe the court should have sustained the motions of the Director General, Agent, for a peremptory instruction in his favor on the company's counterclaim and setoff, both at the close of its case and at the close of the whole case, because there was no evidence authorizing a recovery by appellee upon its counterclaim.

It appears in evidence that in the year 1917, the Chesapeake and Ohio Railway Company, in the course of the erection of a new depot in the city of Maysville, entered into a contract with a man by the name of Ire-

land for the performance of certain work in connection therewith. This contract, with the consent of the Chesapeake & Ohio, was assigned to the appellee for whom Ireland worked. Later, this contract was taken over by the United States Railroad Administration, following federal control. Still later, a second contract for other work in connection with this depot was also entered into between the United States Railroad Administration and Ireland, and by him assigned to the appellee with the consent of the Railroad Administration. In addition to the work provided for by both of these contracts, there was also a lot of other work done in the erection of the depot by the appellee for the Railroad Administration on what is known as a "force account;" that is, extra work ordered by the engineer of the Railroad Administration and done by the appellee on a "cost plus" basis. There were no formal written contracts for this extra work, it being more or less incidental to the main work. Both of these contracts were carried out under the "construction department" of the railroad operated by the Director General and all work under them was completed by November 30, 1919. In the summer of the year following, a complete and final settlement was made between the Railroad Administration and appellee for these contracts and all extra work done thereunder as of November 30, 1919.

Prior to or just after the completion of these contracts, as noted, Ireland informed the superintendent in charge of the maintenance of ways of the railroad, that he would thereafter be out of a job and if this superintendent could find anything for him to do, he would be obliged for the work. The superintendent promised to keep him in mind. About the middle of December, 1919, this superintendent, mindful of his promise to Ireland, got in touch with him, and, as he testified, made a contract with him to do some cleaning up work about the new station. This Ireland did, charging the Railroad Administration the sum of fifty-six dollars ($56.00), which was paid. Following this, the superintendent made, as he said, another agreement with Ireland to do some other work about the station. This Ireland also did, charging the Railroad Administration the sum of two hundred and two dollars and fifty cents ($202.50), which was paid. This superintendent testified that in making these two small contracts, he was dealing with Ireland; made the contracts with Ireland and did not know the appellee in

the transactions at all. There is no competent evidence in the record to offset this testimony. Appellee's evidence simply showed that Ireland in the doing of this subsequent work in December and the months following, used a horse and cart belonging to it and a few of its employes who were paid with money obtained from it by Ireland for that purpose. Appellee thought either that Ireland had procured these subsequent contracts for it, or at least that the work which was being done was "force account" work. But there is nothing in the evidence which justified this surmise on the part of the appellee, except representations made to it by Ireland without the knowledge or consent of the Railroad Administration, and a passing reference in a letter to it from an employe of the appellant in a branch of the service different from that of maintenance of ways under which this work was being done as appellee knew. This employe was not shown to have had any authority to make the statement he did or that he had any knowledge on which to base it. No estoppel can arise on this statement, because the work had been completed on one of these subsequent contracts and was being done on the other at the time the appellee received this letter. Further, the appellee made its final settlement in the summer of 1920 with appellant as above noted, and never raised any question at that time about this subsequent work, although appellee now claims it was a part of the "force account" work it had done for the Railroad Administration. There can be no doubt but that Ireland deceived the appellee and that appellee relied upon Ireland, but it cannot by reason of this deception create a contract with the appellant which never existed nor one by way of estoppel. The Railroad Administration did not know of the appellee in the matter nor did it do anything calculated to deceive appellee. Even if it be conceded that Ireland was acting as the undisclosed agent of appellee, a matter which is highly doubtful in this case, yet as the payments to him were made by appellant long before the alleged agency was disclosed to him, the appellant is protected and appellee must look to Ireland. 21 Rul. Cas. Law 900. There being no proof of any contract between the Railroad Administration and appellee and there being nothing in the evidence on which to base an estoppel, the court should have peremptorily instructed the jury to find for appellant on appellee's counterclaim and setoff.

Appellant also insists that the court should have dismissed the counterclaim and setoff because not filed within the time permitted by the Transportation Act of February 28, 1920. Appellant, however, did not raise this point in the court below except possibly by its motion for a peremptory instruction and, although it may have been entitled to have had such motion sustained on such grounds, yet, without deciding this question at this time, we believe it would be better for appellant to plead this matter in avoidance and on the return of this case he will be given permission to amend his reply and set up this defense if he so desires.

If on a retrial of the case the facts appear as on the first trial, the court will peremptorily instruct the jury to find for appellant on appellee's counterclaim.

Wherefore the judgment of the lower court is affirmed so far as it gave appellant a judgment on his claim, and is reversed on appellee's counterclaim and setoff with directions to grant a new trial in accordance with this opinion.

Judgment affirmed in part and reversed in part.